Eord, J.
This was an ejectment, wherein the plaintiff claimed the premises under a purchase from auditors, who had sold under an attachment against Asa .Monjoy, the 29th of July, 1822. The title of Asa Monjoy arose under a deed from the defendant himself and his wife, dated the 9 th of April, 1803, acknowledged the 23d of the same month. The defendant proved that possession had always been in him, notwithstanding the instrument, called a deed, to his son Asa, who, however, resided with him. And, in order to invalidate the deed, he offered evidence of his son’s declarations, to the following effect: that the deed had never been delivered to him; that he paid no consideration for it ; that he never intended to set up a claim under it; that it was a sham deed, and that the property was not his. . To this evidence there was an objection by the plaintiff; but the evidence was admitted by the court, and the defendant called his two daughters, who swore to the declarations of their brother Asa, as before stated. The jury, however, found a verdict for the plaintiff against the testimony of the daughters, though they testified to nothing- incredible or contradictory, and though no evidence was *offered to impeach their credit. The defendant moves to set aside the verdict, as being contrary to evidence.
It is observable that the defendant and his wife had made a formal and solemn acknowledgment before a judge that they had sealed and delivered the deed in question to their *211 son Asa, for the uses and purposes therein mentioned; and therefore, as touching the delivery of the deed, the verdict was not contrary to evidence nor against the weight of evidence. The defendant next offered to impeach the conveyance to Asa, on two distinct grounds: first, that it was a sham; and secondly, that it was voluntary, without any consideration.
If the meaning of sham be, what it is commonly understood to mean, a deed made to delay or de-feat creditors, it is certainly void as to creditors, and may be set aside in their favor by virtue of the statute of frauds; but then the same statute makes it a valid conveyance as against the defendant himself, therefore ho ought not to have been permitted to give this evidence against a deed of his own making; or, if received at all, it could only be in confirmation of the conveyance. In the next place, suppose it to have been made without any consideration, and thereby to assume the character of a voluntary conveyance to his son, such voluntary conveyances are valid in law and equity, as between the parties themselves, and are never set aside in either court but for the benefit of creditors, and on their application. This evidence ought not, therefore, to have been received from the defendant, or if received, it could only go in confirmation of the conveyance.
This removes every foundation for the defence to rest upon, except the declaration of Asa, that he never intended to set up any claim; and yet his carrying away the deed to be recorded, manifested an intent of mind at least as strong as what his sisters testified respecting a contrary intent, which relieves this verdict from the objection of being contrary to evidence, or the .lighter one of being against the weight of evidence. But be these things as they may, respecting an intent not to enforce his claim against his parents, the legal estate was vested in him and his heirs by a regular conveyance, which cannot be defeated or divested *212 by word of mouth, inasmuch as an interest in lands cannot be affected by parol under the statute of frauds. I am of opinion, therefore, that the rule to shew cause must be discharged.
Kirkpatrick, C. J. and Rossell, J. concurred.